GROOMS, Appellant,

v.

SUPPORTING COUNCIL OF PREVENTATIVE EFFORT, Appellee.

[Cite as *Grooms v. Supporting Council of Preventative Effort,* 157 Ohio App.3d 55, 2004-Ohio-2034.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20199.

Decided April 23, 2004.

56

Don Brezine, for appellant.

Diane L. Gentile and Audrey S. Adams, for appellee.

BROGAN, Judge.

{¶ 1} John Grooms appeals from the trial court's entry of summary judgment against him and in favor of appellee Supporting Council of Preventative Effort ("SCOPE") on his state-law claims of race discrimination, disability discrimination, and wrongful discharge in violation of public policy.

{¶ 2} Grooms advances three assignments of error on appeal. First, he contends that the trial court erred in entering summary judgment against him on his race-discrimination claim. Second, he argues that the trial court erred in entering summary judgment against him on his disability-discrimination claim. Third, he asserts that the trial court erred in entering summary judgment against him on his claim alleging wrongful discharge in violation of public policy.

{¶ 3} Upon review, we agree that the trial court erred in sustaining SCOPE's motion for summary judgment as to the race-discrimination and wrongful-discharge claims. We find no error, however, in the trial court's entry of summary judgment against Grooms on his disability-discrimination claim. Accordingly, the trial court's judgment will be affirmed in part and reversed in part, and the cause will be remanded for further proceedings.

## I.   Factual and Procedural Background [1]

{¶ 4} Shortly after being hired in 1993, Grooms began working as a crew leader for SCOPE, an organization that provides home-improvement services to low-income persons and receives federal and state funding. Grooms's duties as a crew leader included supervising other employees on a job site and ensuring that all work was performed properly.

{¶ 5} Following a reorganization of SCOPE's operations in 2000, Grooms, who is white, came under the supervision of Leonard Florence, who is black. Grooms began experiencing problems after Florence became his supervisor. Grooms believes that Florence sometimes criticized him unfairly. For example, Florence once criticized him for returning a work truck a few minutes early. Florence also criticized him for leaving work-related parties or cookouts to check on jobs. In addition, Florence took seven or eight months to get Grooms a new truck.

---

1.  The facts set forth herein are taken from a transcript of Grooms's deposition testimony. Given that Grooms appeals from the entry of summary judgment against him, we must construe those facts, and all reasonable inferences drawn therefrom, in a light most favorable to him.

Although Grooms believes that Florence's actions were motivated by racial or disability discrimination, the primary issues in this case are Grooms's non-selection for an inspector's position and his later termination.

{¶ 6} With regard to the inspector's position, Grooms heard that it was open and expressed his interest to Florence and a higher-level supervisor named Dave Eldridge. Eldridge told Grooms that the position was not going to be filled. Two weeks later, however, the position was given to Brian Davis, a black employee. Davis received the position despite his lack of inspector certification, which Grooms possessed. Grooms also had more seniority than Davis. Grooms believes that his non-selection is attributable to race discrimination in part because Eldridge, who along with Florence was responsible for filling the position, had told him that Eldridge's supervisor, Joyce Price, "preferred to promote blacks because they had been done wrong for so many years."

{¶ 7} After his non-selection for the inspector's position, Grooms continued working as a crew leader. He had occasional difficulty performing his job, however, because of various health problems. Following a 1997 heart attack, he had undergone bypass surgery and missed several months of work. As a result of his heart condition, Grooms experienced shortness of breath when he became overheated and sometimes had to stop to cool off. At times, he also noticed blood-pressure problems.

{¶ 8} In November 2000, Grooms was instructed to meet with Florence and Eldridge upon returning from a work site in Greenville, Ohio. During the meeting, Florence informed Grooms that he was "sick" and directed him to see a doctor and to take off two weeks from work. Grooms promptly visited a doctor, who assured him that he could perform his job "in a normal manner." He remained off work for two weeks, however, as he had been instructed by Florence. When he returned, he told Florence about his doctor's belief that he was capable of working. Because Grooms's doctor had not written him an excuse for being sick, Florence charged the two-week absence to Grooms's vacation time. In addition to instructing Grooms to take the time off work, Florence sometimes criticized his eating habits, his smoking, and his need to take occasional rest breaks. However, Florence never denied Grooms any necessary breaks.

{¶ 9} At times, Grooms and Florence clashed over compliance with state regulatory Home Weatherization Assistance Program standards that governed SCOPE's work. Grooms occasionally found problems that needed to be correct-ed. Florence tended to "cut corners" in order to save time and instructed Grooms not to fix the problems. Florence's instructions were contrary to Grooms's training at SCOPE, and the issue became a source of contention between the two men.

{¶ 10} On March 8, 2001, Grooms was working at a home in Middletown, Ohio, with other SCOPE employees. While there, he overheard a field supervisor named Doug arguing with a female resident of the home. The woman told Doug "to get the F out of her house and not to come back[.]" When Florence arrived a short time later, the woman began yelling at him and ordered him to leave as well. In response, Florence went upstairs and told Grooms and an employee named Arty that "all the woman needed was a good F"ing and she would be all right." Florence then left the residence. After his departure, the angry woman asked for the office phone number to make a complaint. Grooms gave her the main phone number for SCOPE's Dayton office.

{¶ 11} Later that day, Grooms was directed to Eldridge's office and fired. Eldridge cited Grooms's act of giving the woman SCOPE's office phone number as the reason for his termination. Eldridge characterized the offense as divulging business information in violation of company policy. Eldridge fired Grooms for giving out the office number despite the fact that it is given out freely and is listed on billboards and in the phone book.

{¶ 12} On January 17, 2003, Grooms filed a three-count complaint alleging race and disability discrimination in violation of R.C. 4112.02 and wrongful discharge in violation of public policy. SCOPE moved for summary judgment on July 17, 2003. The trial court sustained SCOPE's motion in a September 29, 2003 decision, order, and entry. This timely appeal followed.

## II. Summary Judgment Standard

{¶ 13} An appellate court's review of a summary judgment decision is de novo. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 10, 711 N.E.2d 726. Under Civ.R. 56, summary judgment is proper only when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. When evaluating a summary judgment motion, a court must construe the evidence in a light most favorable to the nonmoving party, and the moving party has the burden of establishing that there is no genuine issue as to any material fact. Id. This burden can be met only by identifying specific facts in the record, including "the pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which indicate the absence of genuine issues of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party successfully discharges its burden by establishing that the nonmoving party's case lacks the necessary evidence to support its claims. Id. at 289–290,

662 N.E.2d 264. Once this burden has been met, the nonmoving party then has a reciprocal burden as outlined in Civ.R. 56(E), which provides that the "adverse party may not rest upon the mere allegations or denials of [the party's] pleadings" but "must set forth specific facts showing that there is a genuine issue for trial." If the nonmoving party does not respond or identify specific facts to demonstrate a genuine issue of material fact, summary judgment is proper. Id.

### III. Analysis

### A. Race Discrimination

{¶ 14} In his first assignment of error, Grooms contends that the trial court erred in entering summary judgment against him on his race-discrimination claim under R.C. 4112.02. In support of its decision, the trial court found that Grooms could not establish a prima facie case under the familiar burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. On appeal, Grooms argues that the trial court erred in reaching this conclusion and that the evidence reveals genuine issues of material fact for trial.

{¶ 15} We begin our analysis by noting that the precise nature of Grooms's race-discrimination claim is unclear. One type of claim under R.C. 4112.02 requires proof that severe and pervasive harassment on the basis of race altered the conditions of employment by creating a "hostile work environment." *Tarver v. Calex Corp.* (1998), 125 Ohio App.3d 468, 708 N.E.2d 1041. Another type of claim under the statute requires proof that an employee suffered a specific "adverse employment action" on the basis of race. *Shepard v. Griffin Serv., Inc.*, Montgomery App. No. 19032, 2002-Ohio-2283, 2002 WL 940110.

{¶ 16} In the present case, Grooms has presented evidence that at least arguably implicates both types of race discrimination. As noted above, he contends that Florence unfairly criticized him at times, and he attributes the criticism to a racial animus. These assertions arguably suggest a "hostile work environment" racial-harassment claim. On the other hand, Grooms argues that he was denied a promotion and later terminated because of his race. These assertions suggest a claim that SCOPE took an adverse employment action against Grooms on the basis of his race.

{¶ 17} Although Grooms's complaint is ambiguous on the matter, the parties and the trial court have not treated the claim as one alleging a hostile work environment based on racial harassment. Instead, they have analyzed the claim as one based on a tangible adverse employment action, and we will do likewise. In any event, we note that summary judgment would be appropriate, insofar as Grooms might be asserting a claim for hostile-work-environment racial

harassment. As set forth above, an employee cannot prevail on such a claim unless he establishes severe and pervasive harassment on the basis of race that significantly affects the conditions of employment. In his deposition, Grooms complained only that Florence once criticized him for returning a work truck a few minutes early, sometimes criticized him for leaving work-related parties or cookouts to check on jobs, and took seven or eight months to get him a new truck. Even if these actions were motivated by race discrimination, they fall far short of being severe and pervasive enough to support a hostile-work-environment claim.

{¶ 18} The real thrust of Grooms's race-discrimination claim is that SCOPE took an adverse employment action against him because he is white. Once again, however, the precise basis for the claim is unclear. Grooms's complaint mentions both his failure to be promoted and his termination in connection with his race-discrimination claim. In its summary judgment motion, however, SCOPE focused almost exclusively on Grooms's termination as the adverse employment action at issue. In opposition to the motion, Grooms cited his non-promotion as evidence of race discrimination. It is unclear, however, whether he cited his non-promotion as evidence tending to support an inference that his later termination was racially motivated or whether he relied on his non-selection for the vacant inspector's position as an independent basis for a finding of race discrimination. In its summary judgment ruling, the trial court identified Grooms's termination as the adverse employment action at issue.

{¶ 19} Upon review, we believe that Grooms's complaint and the evidence fairly support a claim for race discrimination based on two distinct adverse employment actions, namely his non-promotion and his later termination.[2] As a result, we will determine whether summary judgment is proper on a claim that SCOPE failed to promote him because of his race. We also will consider whether SCOPE is entitled to summary judgment on a claim that the agency fired Grooms because of his race.

{¶ 20} An employee pursuing race discrimination claims under R.C. 4112.02 may prevail in one of two ways: by presenting either direct or indirect evidence to prove that his employer was motivated by a race-based animus when it took an adverse employment action against him. Absent direct evidence of discrimina-

---

2. For purposes of our analysis herein, we will refer to Grooms's non-selection for the vacant inspector's position as a "non-promotion." The record fails to make clear, however, whether the inspector's position was a higher-level or more prestigious position than the crew leader job that Grooms held. Regardless of the relative statuses of the two positions, the record does make clear that Grooms desired the inspector's position because he perceived that it would be physically less demanding and less stressful for him. As a result, we will presume, absent any argument to the contrary by SCOPE, that Grooms's failure to receive the inspector's position was a materially adverse employment action.

tion, an employee must proceed under the burden-shifting, indirect-evidence approach set forth in *McDonnell Douglas Corp.*, supra.[3]  Under that framework, the employee bears the initial burden of establishing a prima facie case of employment discrimination.  To establish a prima facie case, an employee ordinarily must show (1) that he is a member of a protected class; (2) that he was qualified for the position at issue;  (3) that he suffered an adverse employment action such as non-promotion or termination;  and (4) that a person outside the protected class received the promotion or, in cases involving termination, that he was replaced by someone outside the protected class.  *Smith v. Goodwill Indus. of Miami Valley, Inc.* (1998), 130 Ohio App.3d 437, 441–442, 720 N.E.2d 203.  Alternatively, the fourth element may be satisfied with evidence that a comparable non-protected person was treated better.  Id. at 443, 720 N.E.2d 203.  In cases involving "reverse" race discrimination, some courts have altered the first element of the prima facie case by requiring a white plaintiff to demonstrate ·"background circumstances supporting the inference that [the employer] was the unusual employer who discriminated against [the majority]."  *Ekstrom v. Cuyahoga Cty. Community College*, 150 Ohio App.3d 169, 2002-Ohio-6228, 779 N.E.2d 1067, at ¶ 43 and 45; see, also, *Steffes v. Pepsi–Cola Personnel, Inc.* (Dec. 18, 2001), C.A.6, Nos. 92–2185, 99–2226, and 00–1376, 2001 WL 1631407, at * 4 ("In order to state a prima facie case of 'reverse' race discrimination based upon circumstantial evidence, a plaintiff must prove the following:  '(i) background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against [Caucasians];  (ii) that the plaintiff applied and was qualified for an available promotion;  (iii) that, despite plaintiff's qualifications, [she] was not promoted;  and (iv) that [an African–American] employee of similar qualifications was promoted.' ").[4]

{¶ 21} If an employee establishes a prima facie case, an inference of discrimination arises.  The burden of production then shifts to the employer, which must articulate a non-discriminatory reason for taking an adverse employment action against the employee.  *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.  If the employer cites such a reason, the employee then bears the

---

**3.**  Discrimination claims under state and federal law are subject to the same type of analysis.  As a result, Ohio courts have recognized that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Sections 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."  *Sutherland v. Nationwide Gen. Ins. Co.* (1994), 96 Ohio App.3d 793, 799, 645 N.E.2d 1338, citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128.

**4.**  Although *Steffes* involved the application of Michigan law, we cite it because the parties mentioned it in their briefs and discussed it at some length during oral argument.  In any event, it does not appear to differ significantly from the Ohio case law upon which we have relied herein.

burden of proving (or, in the present context, demonstrating a genuine issue of material fact) that the stated non-discriminatory reason for the adverse employment action is pretextual. The employee may do so by showing that the asserted reason has no basis in fact, that the reason did not actually motivate the adverse employment action, or that it was insufficient to motivate such action. *Manzer v. Diamond Shamrock Chemicals Co.* (C.A.6, 1994), 29 F.3d 1078, 1084.

{¶ 22} In the present case, Grooms asserts that he need not proceed under the burden-shifting approach set forth above because the record contains direct evidence of race discrimination. In support, he relies on a statement by Eldridge, who along with Florence was responsible for filling the vacant inspector's position, that Eldridge's supervisor, Joyce Price, "preferred to promote blacks because they had been done wrong for so many years." SCOPE contends that this statement is inadmissible hearsay and, therefore, may not be considered.

{¶ 23} Upon review, we do not agree that the statement is inadmissible hearsay. The statement actually raises a "double hearsay" issue. The first issue is Price's statement to Eldridge that she prefers to promote blacks. The second issue is Eldridge's statement to Grooms repeating what Price said. On the record before us, it appears that Price's statement to Eldridge is admissible as a non-hearsay admission of a party opponent under Evid.R. 801(D)(2). Price was Eldridge's supervisor, and she appears to have been expressing her view on a matter of policy within the scope of her employment. Likewise, the statement by Eldridge to Grooms also appears to qualify as an admission of a party opponent. Eldridge made the statement in his capacity as Grooms's supervisor while in a meeting discussing the issue of promotions.

{¶ 24} Although the remark about preferring to promote blacks is admissible, it is not direct evidence that SCOPE failed to promote or terminated Grooms because of his race. Even if Price generally prefers to promote blacks, one must infer that Eldridge adopted the same preference and acted on it when he and Florence promoted a black employee instead of Grooms. Thus, the statement does not constitute direct evidence that Eldridge and Florence discriminated on the basis of race when they failed to promote Grooms. Finally, because the statement about promotions does not expressly address terminations, it cannot qualify as direct evidence that Grooms was fired because of his race.

{¶ 25} Absent direct evidence of race discrimination, Grooms must establish a prima facie case under the standards set forth above. The trial court held that he could not satisfy the first part of the test, which it modified to fit a "reverse" discrimination claim. In particular, the trial court found no evidence, other than Grooms's "unsubstantiated and vague accusations" and "conclusory statements," to support an inference that SCOPE "was the unusual employer who discrimi-

nated against the majority." We disagree. Although Price's statement about preferring to promote blacks over whites is not direct evidence of discrimination in Grooms's case, it certainly supports an inference that SCOPE discriminates against the majority race in favor of minorities. Additionally, the record reflects that Price made the remark to Eldridge, who then repeated the policy when explaining why Grooms was not promoted. As a result, a trier of fact reasonably might infer that Eldridge had adopted Price's discriminatory preference. Contrary to the trial court's ruling, we find nothing "vague" or "conclusory" in Grooms's testimony about the discriminatory statement. Grooms recalled that Eldridge had repeated the statement in a meeting while discussing the issue of promotions. Although the trial court characterized Grooms's testimony as "unsubstantiated," it must be accepted as true in the context of summary judgment. As a result, we find background circumstances from which a trier of fact could conclude that SCOPE discriminates against the majority.[5]

{¶ 26} With regard to the second element of the prima facie case, the trial court acknowledged that Grooms was fired from his crew leader position, thereby suffering an adverse employment action. Although the trial court did not address Grooms's non-selection for the vacant inspector's position under the second element of the prima facie case, we note that it too qualifies as an adverse employment action. Thus, Grooms has satisfied the second element with regard to his non-promotion and his termination.

{¶ 27} As for the third element of the prima facie case, the trial court found that Grooms was qualified for the crew leader position that he held until his termination. We note that the record also contains evidence from which a trier of fact could find that Grooms was qualified for the vacant inspector's position that he sought. Indeed, Grooms testified that he had the necessary inspector certification, whereas the person who received the position did not. Therefore, Grooms has satisfied the third element of his prima facie case with regard to his non-promotion and his termination.

{¶ 28} The final element of Grooms's prima facie case requires more detailed analysis. With regard to his non-selection for the inspector's position, Grooms can satisfy this element by showing that a black employee received the job. With regard to his termination, he can satisfy this element by showing that he was replaced by a black employee. In its summary judgment ruling, the trial court found no evidence that a black employee either was selected for the vacant

---

5. On appeal, SCOPE contends that Grooms never witnessed a preference for black employees at work and that he does not know whether anyone at the agency ever promoted black employees based on their race. Regardless of whether Grooms has personal knowledge of any racial bias, however, the very essence of his lawsuit is that Eldridge and Florence promoted a black employee, Brian Davis, based on his race.

inspector's position instead of Grooms or was hired after Grooms's discharge. With regard to Grooms's termination, the trial court also found no evidence that any black employee had received more lenient treatment for engaging in the same or similar conduct. Therefore, the trial court found that Grooms could not satisfy the fourth element of his prima facie case under the alternative method set forth above.

{¶ 29} In our view, the trial court erred in finding that Grooms could not satisfy the fourth element of his prima facie case. Grooms testified that Brian Davis, a black employee, received the vacant inspector's position. This testimony alone satisfies the fourth element as to the promotion issue. On appeal, SCOPE points to deposition testimony in which Grooms conceded that he did not know Davis's qualifications, did not know everyone who applied for the inspector's position, and did not know whether Davis actually applied or was asked to assume the position. These facts have no bearing on Grooms's ability to establish a prima facie case. If Grooms was less qualified than Davis, then SCOPE may have a legitimate, non-discriminatory reason for selecting Davis. But the candidates' relative qualifications are not relevant at the prima facie case stage. Likewise, it is immaterial that Grooms does not know everyone who applied or that Davis may have been asked to assume the inspector's position. At the prima facie case stage, the critical facts are that Grooms, a white employee, expressed interest in the position and that SCOPE selected Davis, a black employee, to fill it. These facts are sufficient to satisfy the final element of Grooms's prima facie case based on his non-selection for the inspector's position.

{¶ 30} With regard to Grooms's termination, the trial court found summary judgment appropriate based on his failure to offer evidence that he was replaced by a black employee. We note, however, that SCOPE did not move for summary judgment on this basis. Instead of asserting that Grooms was not replaced by a black employee, SCOPE moved for summary judgment based on Grooms's inability to make the alternative showing that a black employee was treated differently for engaging in the same or similar misconduct. In other words, although a plaintiff such as Grooms may satisfy the fourth element of his prima facie case in one of two ways, SCOPE addressed only one of those ways in its motion for summary judgment. Given that SCOPE did not rely on the race of Grooms's replacement as a basis for summary judgment, Grooms was not required to come forward with any evidence on the issue. Thus, a genuine issue of material fact still exists as to whether Grooms was replaced by a black employee.

{¶ 31} In addition, we find a genuine issue of material fact as to whether Grooms was treated differently than similarly situated black employees who engaged in conduct like his. On appeal, SCOPE relies on an affidavit from John

Donnellan, its executive director, who avers that Grooms was fired for two reasons: (1) threatening another employee with physical violence; and (2) giving a disgruntled client the telephone number of the state agency that provides SCOPE with funding. SCOPE stresses that Grooms failed to identify any minority employee who was not fired for engaging in similar misconduct.

{¶ 32} If we were construing the evidence in a light most favorable to SCOPE, its argument might be persuasive. In the context of summary judgment, however, we must construe the evidence in a light most favorable to Grooms, the nonmoving party. In his deposition, Grooms stated that Eldridge cited his act of giving an angry client SCOPE's office telephone number as the only reason for his termination. In light of this testimony, which we must accept as true, the question is whether Grooms was treated differently than black employees who gave SCOPE's office telephone number to someone who asked for it. Although *neither party* has identified a specific black employee who ever gave out SCOPE's office telephone number, it is unfathomable that a black employee would be fired for engaging in such benign conduct. Indeed, Grooms testified that SCOPE's office number is given out freely and is listed on billboards and in the phone book. As a result, we find a genuine issue of material fact as to whether Grooms can satisfy the fourth element of his prima facie case under this alternative method as well.

{¶ 33} Given that Grooms has established a prima facie case of race discrimination based on his non-selection for the inspector's position and his later termination, the burden of production shifts to SCOPE to articulate a non-discriminatory reason for both actions. As noted above, SCOPE has cited two non-discriminatory reasons for Grooms's termination: (1) threatening another employee with physical violence; and (2) giving a disgruntled client the telephone number of the state agency that provides SCOPE with funding. With regard to Grooms's non-selection for the inspector's position, SCOPE appears to suggest that he was not selected either because he was less qualified than Davis or because no vacancy actually existed. In this regard, SCOPE insists that Grooms "is unable to state what qualifications [Davis] would bring to the position and in fact does not even know if such a position actually was available," thereby implying that Davis was better qualified or, alternatively, that no position existed. Without question, either justification would qualify as a non-discriminatory reason for not selecting Grooms.

{¶ 34} Based on the record before us, however, we find a genuine issue of material fact as to whether SCOPE's reasons for not selecting Grooms and later firing him are pretextual. Grooms himself testified that an inspector's position was available, that he asked for the position, and that it was given to a black employee. Thus, if SCOPE's argument is that no position was available, a trier

of fact could find its argument to be factually false. Grooms also testified that he had the necessary inspector's certification, which Davis lacked. Consequently, if SCOPE's claim is that Davis was better qualified for the inspector's position, a trier of fact could find that explanation to be factually false as well.

{¶ 35} With regard to the issue of termination, SCOPE insists that it fired Grooms for threatening another employee with physical violence and for providing an angry client with the telephone number of a state agency that provides its funding. In his deposition, however, Grooms testified that SCOPE supervisor Dave Eldridge cited his act of giving an angry client SCOPE's office phone number as the reason for his termination. Thus, a trier of fact could find that SCOPE's proffered reasons for firing Grooms are factually false. We note too that SCOPE's reliance on Grooms's threat of physical violence as a basis for termination is suspect for another reason. The incident in question occurred when a supervisor named Doug threatened to "dock" Grooms's pay. In response, Grooms told Doug to "go dock it [and] when you come back I'm going to dot your eye for you." This incident took place several weeks before Grooms's termination, and supervisor Dave Eldridge already had addressed it by instructing Grooms not to touch Doug. A trier of fact reasonably could find that Grooms's threat did not actually motivate SCOPE to fire him in light of (1) Eldridge's failure to mention the incident when terminating Grooms; (2) the lapse of several weeks between Grooms's threat and his termination; and (3) the fact that Eldridge already had dealt with the threat issue by orally reprimanding Grooms.

{¶ 36}. For summary-judgment purposes, it is enough that the truthfulness of SCOPE's non-discriminatory reasons for acting as it did have been called into question. The potential falsity of an employer's purported justifications does not necessarily establish liability, as a trier of fact still must find that the employer's true reason for acting as it did was a discriminatory animus. On the other hand, when potential falsity has been demonstrated, a trier of fact is entitled to conclude that discrimination was "the most likely alternative explanation." *Reeves v. Sanderson Plumbing Prod., Inc.* (2000), 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105. Thus, Grooms's race-discrimination claim survives summary judgment because he has raised a genuine issue of material fact as to the veracity of SCOPE's purported non-discriminatory reasons for taking adverse employment actions against him. It is for a trier of fact to weigh the competing inferences and determine whether discrimination motivated SCOPE not to promote or to discharge him. Accordingly, we sustain Grooms's first assignment of error.

## B. Disability Discrimination

{¶ 37} In his second assignment of error, Grooms contends that the trial court erred in entering summary judgment against him on his state-law disability-

discrimination claim. In support of its decision, the trial court once again found that Grooms could not establish a prima facie case under the burden-shifting approach discussed above. Grooms disagrees and asserts that genuine issues of material fact exist as to whether he was fired because he is disabled.

{¶ 38} To establish a prima facie case of disability discrimination under R.C. Chapter 4112, an employee must show (1) that he was disabled; (2) that his employer took an adverse employment action against him at least in part because he was disabled; and (3) that he could safely and substantially perform the essential functions of the job in question despite his disability. *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738. An employee may satisfy the third element of his prima facie case by showing that he could have performed the essential functions of the job with a reasonable accommodation, if necessary. *Shaver v. Wolske & Blue* (2000), 138 Ohio App.3d 653, 663, 742 N.E.2d 164. Once an employee establishes a prima facie case of disability discrimination, "the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken." *Hood,* supra. If the employer does so, "then the employee * * * must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." Id.

{¶ 39} In the present case, the trial court assumed, arguendo, that Grooms was disabled in light of his heart problems and other ailments. The trial court then found that he could not meet the second element of his prima facie case because the record lacked evidence of SCOPE's taking an adverse employment action against him by firing him at least in part because of his disability.

{¶ 40} Upon review, we find no error in the trial court's ruling. Grooms cites as evidence of disability discrimination the fact that Florence, his supervisor, criticized his eating habits once in 1998, criticized his smoking in June 2000, and questioned his need to take occasional breaks. Grooms also contends that Florence once called him "sick" in November 2000, and had him take off two weeks of work. Upon his return, Grooms advised Florence that he had seen a doctor and had been cleared to perform his job "in a normal manner." He then resumed working, apparently without incident, until March 2001.

{¶ 41} Even construing the foregoing evidence in a light most favorable to Grooms, we find the incidents upon which he relies too innocuous, isolated, and remote in time to support a reasonable inference that SCOPE later fired him because he is disabled. Accordingly, we agree that Grooms failed to establish a prima facie case of disability discrimination, and we overrule his second assignment of error.

## C. Wrongful Discharge in Violation of Public Policy

{¶ 42} In his third assignment of error, Grooms contends that the trial court erred in entering summary judgment against him on his claim alleging wrongful discharge in violation of public policy. This claim involves certain Home Weatherization Assistance Program ("HWAP") standards developed by the Ohio Department of Development. In his complaint, Grooms asserted that Leonard Florence, his supervisor, directed him to "cut corners" and not perform safety-related work mandated by the HWAP standards. Grooms also alleged that SCOPE fired him in part because he consistently resisted Florence's efforts to violate the standards. The trial court entered summary judgment against Grooms, reasoning that the HWAP standards did not embody any clear public policy to support a wrongful-discharge claim.

{¶ 43} We disagree with the trial court's conclusion on this issue. Under the employment-at-will doctrine, an employer is entitled to discharge an at-will employee at any time, for any reason, or for no reason at all, as long as the discharge is not contrary to law. *Hapner v. Tuesday Morning, Inc.*, Montgomery App. No. 19395, 2003-Ohio-781, 2003 WL 366761. An employer may not, however, discharge an employee when the discharge violates "clear public policy" established by federal or state Constitutions or statutes, administrative rules or regulations, or the common law.

{¶ 44} To establish a claim for wrongful discharge in violation of public policy, an at-will employee such as Grooms must establish (1) that a clear public policy existed and was manifested in a state or federal Constitution, statute or administrative regulation, or in the common law; (2) that dismissing employees under circumstances like those in his case would jeopardize the public policy; (3) that his dismissal was motivated by conduct related to the public policy; and (4) that his employer lacked an overriding legitimate business justification for his dismissal. *Barlow v. AAAA Internatl. Driving School, Inc.*, Montgomery App. No. 19794, 2003-Ohio-5748, 2003 WL 22429543.

{¶ 45} In the present case, the trial court addressed only the first element, concluding that the HWAP standards did not embody any clear public policy to support Grooms's claim. Notably, however, we reached a contrary conclusion in another recent case brought against SCOPE by a terminated employee. In *Hatfield v. Supporting Council of Preventative Effort*, Montgomery App. No. 19932, 2004-Ohio-1478, 2004 WL 590767, we agreed with the plaintiff's argument that because the HWAP regulations were enacted for safety purposes, compliance with those regulations constitutes a clear public policy that an employer may not contravene by ordering its employees to violate those standards. Id. at ¶ 13. In light of that determination, which is equally applicable

herein, we believe that the trial court erred in entering summary judgment against Grooms based on the absence of clear public policy to support his wrongful-discharge claim. Finally, given the trial court's failure to address the other three elements set forth above, we will remand the wrongful-discharge claim for further development of the record and judicial findings as to those issues. Grooms's third assignment of error is sustained.

## IV. Conclusion

{¶ 46} Based on the reasoning set forth above, the judgment of the Montgomery County Common Pleas Court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

FAIN, P.J., and FREDERICK N. YOUNG, J., concur.