OPINION
{¶ 1} Appellant, Lee W. Yeager ("Yeager"), appeals the decision of the Trumbull County Court of Common Pleas which affirmed the decision of the Ohio Civil Rights Commission ("the Commission") finding no probable cause to conclude Yeager was a victim of unlawful reverse discrimination. We affirm.
 {¶ 2} On December 23, 2002, Yeager filed a charge of discrimination with the Commission against General Motors ("GM"). He alleged he had applied for an apprenticeship position at the Lordstown Metal Center in 2002 but was not selected to take the apprenticeship test. Yeager alleged that women and minorities were able to bypass the selection process and take the apprenticeship test based on their gender and/or race. Yeager additionally alleged that the failure to target him for the test was discrimination based on race, gender and age and/or in retaliation for filing a previous charge against GM.
 {¶ 3} On July 10, 2003, the Commission found there was "No Probable Cause" to believe that GM engaged in an unlawful discriminatory practice. Specifically, the Commission found that the targeting program challenged by Yeager had been previously upheld as lawful and non-discriminatory. On July 14, 2003, Yeager moved the Commission to reconsider its finding. After reconsideration, the Commission again found no probable cause to conclude Yeager was the victim of unlawful discrimination or retaliation. Notwithstanding this conclusion, the Commission remanded the matter for further investigation to determine whether a more difficult apprenticeship test was administered to white males than the test administered to women and minorities.
 {¶ 4} On December 11, 2003, after further investigation, the Commission concluded white males, females and minorities are given the same test and that test is a prerequisite to moving forward to the interview stage of the hiring process. Accordingly, the Commission found no probable cause to move forward on Yeager's charge and the case was therefore dismissed.
 {¶ 5} Yeager appealed the Commission's findings to the Trumbull County Court of Common Pleas pursuant to R.C. 4112.06. The lower court determined the findings of the Commission were not arbitrary, capricious or irrational. The trial court accordingly affirmed the Commissions finding of no probable cause.[1] Yeager now appeals the trial court's determination and assigns the following error for our consideration:
 {¶ 6} "The trial court erred in refusing to set aside the Ohio Civil Rights Commision's ("OCRC") final order and remand the case for further review."
 {¶ 7} According to R.C. 4112.06(E), a trial court, in reviewing an appeal from a decision of the Commission, must affirm the Commission's finding if it is supported by reliable, probative, and substantial evidence on the record. Ohio CivilRghts Comm. v. Case Western Reserve Univ. (1996),76 Ohio St.3d 168, 177. "Reliable, probative, and substantial evidence" has been defined as that quantum of evidence which would support a finding of discrimination under Title VII of the Civil Rights Act of 1964, Section 2000e, et seq, Title 42, U.S. Code. Ohio CivilRights Comm. v. Kent State Univ. (1998), 129 Ohio App.3d 231,242, citing, Plumbers Steamfitters Joint ApprenticeshipCommittee v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192,196.
 {¶ 8} Our role when reviewing the Commission's order is more limited than that of the trial court. We must determine whether the trial court abused its discretion in finding that there was reliable, probative and substantial evidence to support the Commission's finding. Case Western Reserve Univ., supra. A trial court abuses its discretion where its decision is clearly erroneous, i.e., the court misapplies the law to undisputed facts. Alexander v. Mt. Carmel Med. Ctr. (1978),56 Ohio St.2d 155, 162; see, also, Case Western Reserve Univ., supra.
 {¶ 9} Under his sole assignment of error, Yeager contends the trial court erred in failing to set aside the Commission's determination finding no probable cause for his claim of reverse discrimination. Yeager first asserts the trial court abused its discretion in affirming the decision of the Commission to the extent the Commission failed to apply the proper governing law. Specifically, Yeager contends two federal supreme court cases,United Steelworkers v. Weber (1979), 443 U.S. 193 and Johnsonv. Transportation Agency (1987), 480 U.S. 616, set forth the governing law for adjudicating claims for reverse discrimination alleged against a private employer with a voluntary affirmative action plan. In Yeager's estimation, the Commission failed to consider the impact of these cases in rendering its "no probable cause" finding. Therefore, Yeager concludes the lower court abused its discretion in affirming the Commission's order.
 {¶ 10} While the Commission's determination failed to set forth the substantive principles of law set forth in Johnson
and Weber, this omission does not mean the trial court abused its discretion in affirming the Commission's decision. So long as the Commission's substantive conclusion was fundamentally reasonable in light of the proper legal standard, the trial court did not abuse its discretion in affirming the Commission's decision. We hold the trial court did not err.
 {¶ 11} While Johnson or Weber set forth a generic framework for analyzing a private employer's voluntarily adopted affirmative action plan, the formula is somewhat generic. According to Johnson, a claimant in Yeager's position must first establish a prima facie case for reverse discrimination.[2] Johnson at 626-627. If such a showing is made, the burden shifts to the employer to set forth a non-discriminatory rationale for its decision. Id. Once the employer does so, the burden shifts back to the claimant to demonstrate the employer's reasons are pretextual; in the context of a challenge to an employer's voluntary affirmative action plan, the analysis of the employer's rationale is guided byWeber. Id.[3] That is, a court will observe whether the employer's voluntary affirmative action plan is designed to "eliminate manifest racial imbalances in traditionally segregated job categories." Weber at 197. The burden shifting process must be followed sequentially; as such, if a claimant fails to make his or her prima facie case, it is axiomatic that his or her claim will fail.
 {¶ 12} Here, the Commission's finding of "no probable cause" is based upon Yeager's failure to make the necessary prima facie showing of reverse discrimination. In the Commission's reconsideration of its "no probable cause" finding, it determined there was no proof that GM discriminated against white males. In arriving at this conclusion, the OCRC cited Garnett v. GeneralMotors Corp. (N.D. Ohio, 2000), 114 F.Supp.2d 649, a case which had previously reviewed GM's voluntary affirmative action plan and found it in compliance with the law. The court acknowledged the preclusive effect of the holding and accordingly dismissed appellant's complaint. As Yeager failed to make a prima facie showing of discrimination, the Commission properly dismissed his complaint. In effect, the Commission did not misapply the law, it simply recognized the shortcomings in appellant's allegations and dismissed them accordingly.
 {¶ 13} Next, Yeager argues the OCRC erred in failing to examine the merits of the apprenticeship selection process. As foreshadowed by the foregoing discussion, we hold any such analysis was unnecessary owing to the preclusive effect of prior judgments addressing the process.
 {¶ 14} In Yeager v. Ohio Civil Rights Commission, 11th Dist. No. 2004-T-0099, 2005-Ohio-6151, (Yeager I) a case involving the same parties as well as the same issue as the matter sub judice, this court acknowledged the preclusive effect of prior federal court decisions addressing the validity of GM's affirmative action program as it pertained to the administration of its apprenticeship program. In Yeager I, Yeager filed a charge with the Commission alleging he was refused admission to the GM skilled trades apprenticeship training program based upon his race and gender. During the pendency of the administrative action before the Commission, Yeager filed suit in the United States District Court for the Northern District of Ohio alleging that GM's actions constituted violations under Title VII or the Civil Rights Act of 1964. Yeager's case with the Commission was stayed pending the outcome of the case.
 {¶ 15} The District Court ultimately dismissed Yeager's case holding he had no standing to bring the Title VII action. Yeagerv. General Motors Corp. (N.D. Ohio, 1999), 67 F.Supp.2d 796. Yeager appealed to the Sixth Circuit Court of Appeals which affirmed the decision of the district court. Yeager v. GeneralMotors Corp. (C.A. 6, 2001), 265 F.3d 389. However, the Sixth Circuit went beyond the district court's holding and determined that even if Yeager had standing, he could not prevail on the merits because he failed to establish a prima facie case for reverse discrimination.
 {¶ 16} Yeager subsequently sought to reactivate his case before the Commission. After lifting the stay, the Commission dismissed Yeager's case based upon the doctrines of collateral estoppel and res judicata, finding Yeager's federal case encompassed the same facts and claims as contained in the complaint and notice of hearing originally issued by the Commission in 1997. On appeal, this court affirmed, holding:
 {¶ 17} "The requirements for both res judicata and collateral estoppel are met in this case. First of all, the claims and the issues were identical in the federal court litigation to those in the cases before the Commission. In addition, they arose from the same transaction. In Yeager's case, his claim of reverse discrimination was dismissed for lack of standing in the district court, but then adjudicated on the merits in the Sixth Circuit Court of Appeals. * * *.
 {¶ 18} "Secondly, the decisions in both cases were valid final judgments.
 {¶ 19} "Thirdly, even though the same parties did not participate in the federal court litigation and the proceedings before the Commission, we believe that the interests of Yeager * * * and the Commission are sufficiently close to call for privity, and that, therefore, res judicata and collateral estoppel do apply to bar the relitigation of Yeager's * * * complaint.
 {¶ 20} "Privity is defined broadly to include a `mutuality of interest, including an identity of desired result.' In Ohio, `mutuality' means that a judgment must be preclusive for both parties, but this rule can be relaxed to allow nonmutuality where `justice would reasonably require it.' The privity requirement is met for purposes of res judicata and collateral estoppel, because Yeager * * * and the Commission had a `mutuality of interest' to stop discriminatory practices. Alternatively, even if `mutuality of interests' does not exist, this is a case where `justice would reasonably require [collateral estoppel]' to bar reltigation." Id. at ¶ 37-40. (Citations omitted).
 {¶ 21} We believe the foregoing analysis applies with equal force to Yeager's current appeal.
 {¶ 22} The doctrine of res judicata applies when (1) the judgment of a prior case is valid, final and was decided on the merits; (2) the judgment in the prior case was issued by a court of competent jurisdiction; (3) both the prior and present suit involve the same parties or those whose interests are adequately close to demonstrate a relationship of privity; and (4) both the prior and present case arose from the same transaction or occurrence. Yeager I, supra, at ¶ 35.
 {¶ 23} Collateral estoppel is applicable when a fact or issue (1) has been actually and directly litigated in a prior action, (2) has been passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom the doctrine is asserted was a party in privity with the party in the prior action. Thompson v. Wing, 70 Ohio St.3d 176, 183,1994-Ohio-358.
 {¶ 24} Here, appellant challenges the exact same affirmative action plan addressed by this court in his 2005 appeal, i.e., appellant argues GM's voluntary affirmative action plan is invalid as it acts to discriminate against applicants on the basis of race and gender. Although appellant's sole assignment of error asserts the Commission erred by failing to consider the merits of the plan, we believe such consideration redundant. The plan had been considered by at least two federal courts, once in the Sixth Circuit Court of Appeals (Yeager v. General MotorsCorp. (C.A. 6, 2001), 256 F.3d 389) and once in the U.S. district court (Garnet v. General Motors Corp. (N.D. Ohio, 2000), 114 F.Supp.2d 649). Both cases determined the plan was valid and in conformity with existing law. Appellant's attempt to relitigate the merits of GM's plan is barred by both res judicata and collateral estoppel. Accordingly, appellant's sole assignment of error lacks merit.
 {¶ 25} For the reasons set forth above, we hold the OCRC applied the proper legal standards to appellant's claim. We further hold appellant's claim for discrimination is barred by the doctrines of res judicata and/or collateral estoppel. The trial court did not abuse its discretion in affirming the Commission's determination. Therefore, appellant's sole assignment of error is overruled and the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.
William M. O'Neill, J., Colleen M. O'Toole, J., concur.
[1] It is worth noting that appellant's appeals, both to the trial court and this court, did not seek review of the Commission's decision on his allegation of retaliation.
[2] A prima facie case for reverse discrimination requires: (1) background circumstances supporting an inference that GM was the unusual employer who discriminated against non-minority employees; (2) that GM took an action adverse to appellant's employment; (3) that appellant was qualified for the position; and (4) that GM treated appellant disparately from similarly situated minority employees. Courie v. ALCOA,162 Ohio App.3d 133, 2005-Ohio-3483, at ¶ 20, citing Grooms v. SupportingCouncil of Preventative Effort, 157 Ohio App.3d 55, 63,2004-Ohio-2034; Murray v. Thistledown Racing Club, Inc. (C.A. 6, 1985), 770 F.2d 63, 67.
[3] In Weber, the respondent employee challenged the employer's denial of his application for a newly established training program arguing that the employer's selection process impermissibly took into account the race of the applicants. The selection process was guided by an affirmative action plan which provided that 50% of the new trainees would be black until the percentage of black skilled workers in the plant approximated the percentage of blacks in the local labor force. The Supreme Court upheld the plan holding that taking race into account was consistent with Title VII's goals of "[breaking] down old patterns of racial segregation and hierarchy." Weber, supra, at 208. The court further determined that the plan did not "unnecessarily trammel the interest of the white employees," since it did not require "the discharge of white workers and their replacement with new black hirees." Id. at 208. Nor did the plan establish "an absolute bar to the advancement of white employees," since half of those trained in the new program would be white. Id. Finally, the court stated that the plan was a temporary measure, not designed to maintain a racial balance, but to "eliminate a manifest racial imbalance." Id.