[Cite as *Ramsey v. Cent. State Univ. Bd. of Trustees*, 2025-Ohio-2171.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| DR. IEESHA RAMSEY | Case No. 2023-00277JD |
| Plaintiff | Judge Lisa L. Sadler |
| v. | <u>DECISION</u> |
| CENTRAL STATE UNIVERSITY BOARD OF TRUSTEES | |
| Defendant | |

{¶1} Pursuant to Civ.R. 56, Defendant, through counsel, moves for a summary judgment in its favor on Plaintiff's claim of sex-based discrimination. The matter has been fully briefed.

{¶2} Because, after the submitted evidence is viewed most strongly in favor of Plaintiff, no genuine issue as to any material fact remains to be litigated on Plaintiff's claim of sex-based discrimination, and because, as a matter of law, Defendant is entitled to judgment in its favor on Plaintiff's claim of sex-based discrimination, Defendant's motion for summary judgment shall be granted.

## I. Background and Relevant Procedural History

{¶3} Plaintiff Dr. Ieesha Ramsey—an African American woman who holds a Ph.D. in educational leadership, higher education administration from the University of Dayton—served as the Executive Director of the Undergraduate Student Success Center (USSC) at Central State University (CSU) from February 1, 2021, to August 2022. (Amended Complaint, ¶ 2, 7, Affidavit of Dr. F. Erik Brooks; Ramsey Deposition, 8, 16.)[1] During

---

[1] The copy of Dr. F. Erik Brooks' Affidavit that Defendant filed with its summary-judgment motion is not signed or notarized. On May 19, 2025, Defendant filed an executed and notarized version of Dr. F. Erik Brooks' Affidavit and, in an accompanying notice, Defendant represented, "The only difference between the newly filed affidavit and the preciously [sic] filed affidavit is Dr. Brooks's signature and the notarization. There are no substantive differences." The Court agrees with Defendant's representations about the lack

Plaintiff's tenure as Executive Director of the USSC, one of the duties and responsibilities of the Executive Director was to "[d]evelop and implement a strategic plan and initiatives related to freshmen retention models." (Exhibit C, Ramsey Deposition.)

{¶4} In August 2022 Plaintiff was removed from the position of Executive Director of the USSC and reassigned to the position of scholarship coordinator in the financial aid office.[2] About three months later, around November 25, 2022, Plaintiff left her employment at Central State University. (Ramsey Deposition, 16, 17, 47.)

{¶5} In December 2022, after Plaintiff left Central State University, the duties of the Executive Director of USSC were assigned to Lakeisha Jenkins-Washington, a woman. (Ramsey Deposition, 46; Brooks Affidavit.). Lakeisha Jenkins-Washington previously had spearheaded retention initiatives for the entire university. (Ramsey Deposition, 40.)

{¶6} Since December 9, 2022, Plaintiff has been employed at Virginia Commonwealth University in the School of Social Work where Plaintiff is the Director of Student Success for the School of Social Work. (Ramsey Deposition, 10, 12.)

{¶7} Plaintiff has sued Defendant Central State University Board of Trustees in this case, asserting a claim of sex discrimination under R.C. 4112.01 et seq. (Amended Complaint).[3] Plaintiff asserts that she "was treated differently than male comparables

---

of substantive differences between the non-executed version of Dr. Brooks' Affidavit and the executed version of Dr. Brooks' Affidavit.

[2] Plaintiff testified in a deposition:

The only reasons that I were given [for the demotion] were the reasons that were listed in the letter that I received, which Pam Bowman [Defendant's HR Director] read to me. She said, I know you can read, but I'm going to read the letter so that we have a clear understanding. In the letter, it lists several qualities that the executive director of the Undergraduate Student Success Center should possess. Then it said that there have been discussions of issues with your job performance, and you're being reclassified to the role of scholarship coordinator.

(Ramsey Deposition, 59-60.) Compare Affidavit of Dr. F. Erik Brooks at ¶ 5-6 (indicating that some university leadership staff were critical of Plaintiff's decision making and stating that decrease in retention numbers of first year students contributed to the change in Plaintiff's responsibilities).

[3] The Board of Trustees of Central State University does not have statutory authority to sue or be sued. *Compare* R.C. 3343.05 (the Board of Trustees of Central State University is required to "take, keep, and maintain exclusive authority, direction, supervision, and control over the operations and conduct of such university, so as to assure for said university the best attainable results with the aid secured to it from the state. . . .") with R.C. 3335.03(A) (providing that "[t]he trustees and their successors in office shall be styled the 'board of trustees of the Ohio state university,' with the right as such, of suing and being sued, of contracting and being contracted with, of making and using a common seal, and altering it at their pleasure")

who had performance issues, which Defendant alleged Plaintiff also experienced, and which Plaintiff denies." (Amended Complaint, ¶ 15.) Plaintiff further asserts that she "was also subjected to a hostile work environment because she was a strong assertive African American female." (Amended Complaint, ¶ 20.) Plaintiff seeks reinstatement to her former position as Executive Director of the USSC at Central State University, plus back pay and benefits in excess of $100,000, compensatory damages in excess of $100,000, statutory damages, reasonable attorney fees and costs, pre- and post-judgment interest, and any other relief, equitable or otherwise, as the Court deems appropriate. (Amended Complaint.)

{¶8} Defendant disputes Plaintiff's claim of sex-based discrimination, contending that it had legitimate, non-discriminatory reasons, for any actions it took concerning Plaintiff's employment.

{¶9} On April 18, 2025, Defendant, through counsel, moved for a summary judgment in its favor.[4] Eleven days later, on May 2, 2025, Plaintiff, through counsel, filed a response in which Plaintiff contends that Defendant's summary-judgment motion should be denied because material issues of fact remain to be determined.[5] A week later, on

---

and 3335.03(B) ("[e]xcept as specifically provided in [R.C. 2743.03(A)(2)], the court of claims has exclusive, original jurisdiction of all civil actions against the Ohio state university board of trustees").

Despite Defendant Central State University Board of Trustees' lack of statutory authority to be sued under R.C. 3343.05, Defendant has not challenged this Court's exercise of jurisdiction over Defendant in Defendant's summary-judgment motion. *See Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11-12 (the term "jurisdiction" encompasses jurisdiction over the subject matter and person, and the term "jurisdiction" is used when referring to a court's exercise of its jurisdiction over a particular case); *see also In re Burton S.*, 136 Ohio App.3d 386, 391 (6th Dist.1999) (a court obtains personal jurisdiction over a defendant by service of process, or by the defendant's voluntary appearance or actions. The defense of lack of personal jurisdiction is waived if it is not raised in a responsive pleading or in a motion filed prior to the answer).

Central State University—a nonparty in this case—is a state educational institution. R.C. 3343.01. A state university is an instrumentality of the state and is amenable to suit in the Court of Claims. *Collins v. Univ. of Cincinnati*, 3 Ohio App.3d 183 (1st Dist.1981).

[4] Three days after Defendant moved for summary judgment—on April 21, 2025—Defendant filed a copy of a transcript of a deposition of Plaintiff with accompanying exhibits from Plaintiff's deposition.

[5] Plaintiff did not file any evidence of the kind specified in Civ.R. 56(C) with Plaintiff's response to Defendant's summary-judgment motion. Pursuant to Civ.R. 56(E),

[w]hen a motion for summary judgment is made and supported as provided in [Civ.R. 56], an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth

May 9, 2025, Defendant, through counsel, filed a reply to Plaintiff's response, essentially urging that Plaintiff's response contains "nothing but unsupported, conclusory assertions or mischaracterizations of the record" and that Plaintiff has failed to show that that there is a genuine dispute of material fact concerning her sex discrimination claim against Defendant.

{¶10} Pursuant to Civ. 56 and L.C.C.R. 4(D), Defendant's summary-judgment motion was scheduled for a non-oral hearing on May 27, 2025, without presence of counsel or the parties. Defendant's motion for summary judgment is before the Court for determination.

## II.    Law and Analysis
### A. Legal Standard for Summary Judgment

{¶11} Rule 56 of the Ohio Rules of Civil Procedure governs motions for summary judgment.[6] Under Civ.R. 56(C) summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." Any evidence that is not specifically listed in Civ.R. 56(C) "is only proper if it is incorporated into an appropriate affidavit under Civ.R. 56(E)." *Pollard v. Elber*, 2018-Ohio-4538, ¶ 22 (6th Dist.) *Accord Barton v. Cty. of Cuyahoga*, 2020-Ohio-6994, ¶ 21 (8th Dist.). Courts "may consider other evidence if there is no objection on this basis." *State ex rel. Gilmour Realty, Inc. v. City of Mayfield Hts.*, 2009-Ohio-2871, ¶ 17; *Pollard* at ¶ 22.

{¶12} According to Civ.R. 56(C) a summary judgment "shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the

---

specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

[6] Pursuant to R.C. 2743.03(D), the Ohio Rules of Civil Procedure "shall govern practice and procedure in all actions in the court of claims, except insofar as inconsistent with [R.C. Chapter 2743]."

party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."[7] The Supreme Court of Ohio has explained that, on motion for summary judgment, the moving party "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In *Dresher* the Supreme Court of Ohio stated:

> [T]he moving party bears the initial burden of *demonstrating* that there are no genuine issues of material fact concerning an essential element of the opponent's case. To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. The evidentiary materials listed in Civ.R. 56(C) include "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any." These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

(Emphasis sic.) *Dresher* at 292-293.

{¶13} If a moving party "fails to satisfy its initial burden, the motion for summary judgment must be denied." *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). *See Omega Riggers & Erectors, Inc. v. Koverman*, 2016-Ohio-2961, ¶ 69 (2d Dist.) ("unless the movant satisfies its initial burden on a motion for summary judgment, the non-movant has no burden of proof"). But if a party who moves for summary judgment has satisfied its

---

[7] Discussing Civ.R. 56(C), the Supreme Court of Ohio has stated:

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

*State ex rel. Grady v. State Emp. Rels. Bd.*, 78 Ohio St.3d 181, 183 (1997), citing *Temple v. Wean United, Inc.*, 50 Ohio St. 2d 317, 327 (1977).

initial burden, then a nonmoving party "has a reciprocal burden outlined in the last sentence of Civ.R. 56(E)." *Dresher* at 293.  *See* Civ.R. 56(E) ("[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the party does not so respond, summary judgment, if appropriate, shall be entered against the party").

{¶14} Under Ohio law a material fact "is an essential element of the claim or defense, as defined by the substantive law." *Morgan v. Beigel*, 2011-Ohio-406, ¶ 8 (3d Dist.), citing *Mount v. Columbus & S. Ohio Elec. Co.*, 39 Ohio App.3d 1, 2 (5th Dist.1987). "A dispute of fact is 'material' if it affects the outcome of the litigation."  *Morgan* at ¶ 8, citing *Mount* at 2.  The Tenth District Court of Appeals has discussed the concept of "disputed issues of fact" as follows:

> In every lawsuit there are some disputed issues of fact, but Civ.R. 56 focuses on those which are "material." The materiality determination of facts is discussed in *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.  The mere existence of some factual disputes, if not material, will not defeat a summary judgment otherwise proper.  If one's case is supported only by a "scintilla" of evidence, or if his evidence is "merely colorable" or not "significantly probative," summary judgment should be entered.

*Buckeye Union Ins. Co. v. Consol. Stores Corp.*, 68 Ohio App.3d 19, 22 (10th Dist.1990). The Tenth District Court of Appeals, however, has cautioned:

> At summary judgment, it is not the role of the court to resolve a disputed fact or weigh the credibility of the evidence, only to determine whether there exists a genuine dispute of material fact. . . . The trial court is limited to determining whether admissible evidence of the type contemplated by Civ.R. 56(C) gives rise to a genuine dispute of material fact; it is exclusively the role of the fact-finder to determine what weight to give that evidence at trial.

**B. Under R.C. Chapter 4112 employers may not engage in sex-based discrimination.**

{¶15} The Second District Court of Appeals has discussed R.C. 4112.02 (unlawful discriminatory practices), explaining:

R.C. 4112.02 provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race . . . [or] sex . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A).

An employment discrimination claim under R.C. 4112.02 may be proven either by direct or circumstantial (indirect) evidence. *Saunders v. Greater Dayton Regional Transit Auth.*, 2d Dist. Montgomery No. 28942, 2021-Ohio-3052, ¶ 24. Direct evidence of discrimination "is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in the employer's adverse employment decision. *Id.*, quoting *Conley v. U.S. Bank Nat'l Ass'n*, 211 Fed.Appx. 402, 405 (6th Cir.2006). If direct evidence of a discriminatory animus has been shown, the employer must establish that it would have made the same decision absent the discriminatory motivation. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir.2002). Because employers typically do not announce their discriminatory intent, direct evidence of discrimination is rare. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997); *Provitt v. J.T. Thorpe & Son, Inc.*, N.D.Ohio No. 4:22-CV-486, 2023 U.S. Dist. LEXIS 213544, 2023 WL 8357442, *3 (Nov. 30, 2023).

Absent direct evidence of discrimination, an employee must proceed under the burden-shifting, indirect-evidence approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Grooms v. Supporting Council of Preventative Effort*, 157 Ohio App.3d 55, 2004-Ohio-2034, 809 N.E.2d 42, ¶ 20 (2d Dist.). Under that approach, the employee must first prove, by a preponderance of

the evidence, a prima facie case of discrimination. *Saunders* at ¶ 26. To accomplish this, an employee is required to establish that they (1) are a member of a protected class; (2) were subject to an adverse employment decision; (3) were qualified for the position; and (4) were replaced by someone outside the protected class or were treated differently from similarly-situated non-protected colleagues. *See id.*

> If the employee establishes a prima facie case, the burden of production then shifts to the employer who "must articulate a non-discriminatory reason for taking an adverse employment action against the employee." *Grooms* at ¶ 21, citing *McDonnell Douglas*. If the employer is successful, the burden shifts back to the employee to prove that the stated non-discriminatory reason for the adverse action was pretextual. *Id.*; *Martcheva v. Dayton Bd. of Edn.*, 2021-Ohio-3524, 179 N.E.3d 687, ¶ 50 (2d Dist.).

*Kelley v. Dayton Pub. Schools Bd. of Edn.*, 2024-Ohio-979, ¶ 25-28 (2d Dist.).

{¶16} Civil actions for any violations of R.C. Chapter 4112 are authorized under R.C. 4112.99. *You v. Northeast Ohio Med. Univ.*, 2018-Ohio-4838, ¶ 42 (10th Dist.). *See* R.C. 4112.99.

### C. Plaintiff sustained an adverse employment action; but, after the evidence is construed in Plaintiff's favor, the adverse employment action was not due to sex discrimination.

{¶17} The Tenth District Court of Appeals has stated, "Ohio courts examine both federal and state employment discrimination claims under federal case law." *Samadder v. DMF of Ohio, Inc.*, 2003-Ohio-5340, ¶ 34 (10th Dist.), citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

{¶18} In *Jones v. Delphi Packard Elec. Sys.*, 2000 U.S. App. LEXIS 4153, at *2-3 (6th Cir. Mar. 13, 2000), the United States Court of Appeals for the Sixth Circuit has instructed:

> In a race or sex discrimination suit involving an adverse action such as a demotion, the plaintiff must demonstrate four prima facie elements: (1)

the plaintiff was a member of a protected class; (2) the plaintiff was subject to an adverse employment action; (3) the plaintiff was qualified for the job; and (4) the plaintiff was treated differently than employees outside the protected class for the same or similar conduct.

*Accord Sampson v. Flex N Gate Nine MILE, LLC*, 2024 U.S. App. LEXIS 10543, at *10-11 (6th Cir. Apr. 30, 2024) ("[o]rdinarily, to make a prima facie case of sex discrimination, a plaintiff must establish that she 1) is a member of a protected class; 2) was qualified for her job; 3) suffered an adverse employment action; and 4) was replaced by a person outside the protected class or treated differently than similarly situated, non-protected employees").

{¶19} When the evidence is construed in Plaintiff's favor, it is beyond cavil that a reasonable person would conclude that Plaintiff, an African-American woman, is a member of a protected class. *See King v. Enron Capital & Trade Resources Corp.*, 2002-Ohio-1620, ¶ 15 (10th Dist.) ("[a] review of the uncontroverted facts drawn from the affidavits indicates that appellant is an African-American female and, thus, a member of a protected class"). And, when the evidence is construed in Plaintiff's favor, it is beyond cavil that a reasonable person would conclude that Plaintiff was qualified for the position of Executive Director, as Plaintiff holds a doctoral degree in educational leadership, higher education administration, and Plaintiff worked in various capacities at several educational institutions—Wittenberg University, Lansing Community College, and the University of Dayton—before Central State University hired Plaintiff to be the Executive Director of the USSC. (Ramsey Deposition, 9-10.)

{¶20} In *Kelley v. Dayton Pub. Schools Bd. of Edn.*, 2024-Ohio-979, ¶ 45 (2d Dist.), the Second District Court of Appeals discussed what constitutes an "adverse employment action," stating:

"An 'adverse employment action' is conduct that results in a materially adverse change in the terms and conditions of employment. *Lookabaugh v. Spears*, 2d Dist. Clark No. 2007-CA-16, 2008-Ohio-1610, ¶ 16; *Anderson v. Bright Horizons Children's Centers, LLC*, 10th Dist. Franklin No. 20AP-291, 2022-Ohio-1031, ¶ 38. In general, an adverse employment action occurs when it results in a material change in wage or

salary, a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or other indices that might be unique to the particular situation. Id.; *Moody v. Ohio Dept. of Mental Health & Addiction Servs.*, 2021-Ohio-4578, 183 N.E.3d 21, ¶ 27 (10th Dist.)."

After the evidence is construed in Plaintiff's favor, a reasonable person would conclude that Plaintiff sustained an adverse employment action, because Defendant's demotion of Plaintiff from the position of Executive Director of the USSC and Defendant's reclassification of Plaintiff and reassignment of Plaintiff to the position of scholarship coordinator in Central State University's financial office, resulted in a material change in Plaintiff's wages, a less distinguished title, and significantly diminished material responsibilities. (Ramsey Deposition, 16-17, 23, 47.)

{¶21} According to the evidence, after Plaintiff left her employment at Central State University, another woman, Lakeisha Jenkins-Washington, was assigned the duties of the Executive Director of USSC. Plaintiff thus was replaced by a person within the same sex-based protected class as Plaintiff. Consequently, Plaintiff cannot satisfy the fourth element of the usual prima facie case of sex discrimination by a preponderance of the evidence, as outlined in *Jones*, *supra*, and *Sampson*, *supra*. *See Asp v. Ohio Med. Transp.*, 1999 Ohio App. LEXIS 2991, at *13-14 (10th Dist. June 29, 1999) ("[s]ince Garey, like appellant, is a person who belongs to the protected class, the usual prima facie case of discrimination cannot be shown here").

{¶22} Plaintiff contends, however, that she was treated differently during her employment at Central State University than certain "male comparables" because these certain "male comparables" were not demoted, as Plaintiff was, and these certain "male comparables" did not experience reductions in their pay. In the Amended Complaint Plaintiff alleges:

> Some examples of the discriminatory treatment included Dr. Harold Dixon, Dean of Enrollment Management, being allowed to make a lateral move to Director of Online Admissions after performance problems surfaced. Dr. Dixon did not experience any loss in pay. Dr. Erik Brooks, was given the Provost position by Defendant with no prior experience, and Defendant did not promote a more qualified female candidate, Dr. Rebecca

Ertel. Other examples of males being placed in positions they were not qualified for and not demoted or subjected to a pay reduction included Curtis Pottis, CFO, Darrick Long, Director of Institutional Advancement and Showkat Chaudry, CIO.

(Amended Complaint, ¶ 17.)

{¶23} In *Samadder v. DMF of Ohio, Inc.*, 2003-Ohio-5340, ¶ 40 (10th Dist.), the Tenth District Court of Appeals discussed what constitutes a "similarly situated person," stating:

> A similarly situated person must be similar, but not identical, in all relevant respects to the plaintiff. *Bucher v. Sibcy Cline, Inc.* (2000), 137 Ohio App. 3d 230, 241, 738 N.E.2d 435. Depending on the circumstances of the case, courts have previously required that a plaintiff and a similarly situated co-employee deal with the same supervisor, be subject to the same standards, and be equally qualified. Id. See, also, *Starner v. Guardian Indus.* (2001), 143 Ohio App. 3d 461, 473, 758 N.E.2d 270 (this court has previously examined salary grade, actual salary, experience, educational background, benefits, job title, and other privileges in determining whether co-employees are similarly situated).

*See Jackson v. Champaign Natl. Bank & Trust Co.*, 2000 Ohio App. LEXIS 4390, at *13 (Sep. 26, 2000 10th Dist.), quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) ("[a] plaintiff is 'similarly situated' to others only where 'the individuals with whom the plaintiff seeks to compare [her] treatment . . . have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'").

{¶24} With respect to Jeffery Lindsey's job performance, Dr. F. Erik Brooks—to whom Plaintiff reported for a period of time when Plaintiff was employed at Central State University—has represented, "While I was the Provost, I directly supervised Jeffery Lindsey, a male, who was the Director of CSU's mentorship program. . . . Mr. Lindsey had some performance issues, and I addressed those with him. Mr. Lindsey left employment at CSU before any formal action, such as demotion, could be taken against

him.  My recollection is that Mr. Lindsey was employed at CSU for about a year, and he was the Director of the mentorship program for a shorter period of time than Dr. Ramsey was the Executive Director of the USSC." (Affidavit, at ¶ 8.)  Here, Plaintiff is not similarly situated to Mr. Jeffery Lindsey, because, although Dr. Brooks supervised Plaintiff for a time, Lindsey left before any formal action, such as a demotion, could be taken against him by Central State University.

{¶25} When Plaintiff was questioned in her deposition about the alleged disparate treatment of some of these "male comparables" identified in the Amended Complaint, Plaintiff admitted that she did not talk with the then-university president, Dr. Jack Thomas, about why decisions with respect to Dr. Dixon were made and Plaintiff conceded: "Dr. Thomas and I did not have that type of relationship."  (Ramsey Deposition, 26-27, 65.) Plaintiff also admitted that she did not talk with the then-university president about Curtis Pettis' job performance (Ramsey Deposition, 66), and that, when Plaintiff held the Executive Director position, Plaintiff did not have any kind of regular interactions with Dr. Thomas.  (Ramsey Deposition, 35.)  A reasonable person would thus conclude that Plaintiff did not reach these conclusions based on direct evidence.  Rather, a reasonable person would conclude that Plaintiff reached conclusions about some of these "male comparables" based on hearsay or rumor—e.g., "I heard through the alumni association that we had an endowment of $10 million, and by the time Dr. Thomas got in there, it was down to $2 million.  Just mismanagement of funds and poor -- poorly managed funds. But he [Curtis Pettis] was allowed to stay in his position."  (Ramsey Deposition, 65.). Despite Plaintiff's conclusion that Pettis "poorly managed funds," Plaintiff conceded that she did not know whether anyone complained to Dr. Thomas about Pettis' job performance.  (Ramsey Deposition, 68.)  Moreover, although Plaintiff was critical of the job performance of Jeffery Lindsey (Director of Mentorship Programs) and a perceived lack of accountability concerning Lindsey, Plaintiff conceded that she had never talked with Dr. Thomas about Lindsey.  (Ramsey Deposition, 66-67.)

{¶26} In sum, when the submitted evidence before the Court is construed in Plaintiff's favor, as required by Civ.R. 56(C), a reasonable person would conclude that— although Plaintiff sustained an "adverse employment action" when Plaintiff was employed at Central State University—the adverse employment action was not the result of Plaintiff

having been treated differently than employees outside the protected class for the same or similar conduct.

**D. Plaintiff was not subjected to a hostile work environment due to sex discrimination, after the submitted evidence is construed in Plaintiff's favor.**

{¶27} In *Fry v. Wheatland Tube, LLC*, 2019-Ohio-1453, ¶ 42-43 (5th Dist.), the Fifth District Court of Appeals discussed "hostile environment" harassment as follows:

> A plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination "because of . . . sex" by proving either of two types of sexual harassment: (1) "*quid pro quo*" harassment, *i.e.*, harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) "hostile environment" harassment, *i.e.*, harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 2000-Ohio-128, 729 N.E.2d 726, paragraph one of syllabus.

> In order to establish a claim of hostile work environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Id.* at paragraph two of syllabus. . . .

{¶28} A review of Plaintiff's Amended Complaint shows that Plaintiff has not asserted any "*quid pro quo*" harassment. A review of Plaintiff's Amended Complaint does show, however, that Plaintiff has asserted that she "was also subjected to a hostile work environment because she was a strong assertive African American female." (Amended

Complaint, ¶ 20.)  Despite Plaintiff's allegation, when the submitted evidence is construed in favor of Plaintiff, as required by Civ.R. 56(C), the submitted evidence does not support Plaintiff's claim of a hostile work environment because Plaintiff "was a strong assertive African American female."

{¶29} First, Plaintiff testified in her deposition that she never heard Dr. Brooks (the then-university provost to whom Plaintiff directly reported for a time) use any derogatory terms toward women (Ramsey Deposition, 41), that, during a conversation with Curtis Pettis (CSU's then-Chief Financial Officer), Mr. Pettis did not use any derogatory terms or slurs against women (Ramsey Deposition, 43), that she never heard Dr. Thomas use derogatory terms or slurs toward women (Ramsey Deposition, 45-46), and that she never heard the then-university president's chief-of-staff use any derogatory terms or slurs against women.  (Ramsey Deposition, 44.)

{¶30} Second, according to Plaintiff's deposition testimony, Plaintiff once had an unpleasant encounter with a male colleague, but this encounter—even when Plaintiff's testimony about the encounter is construed in Plaintiff's favor—does not establish a hostile work environment.  According to Plaintiff, Curtis Pettis (then-Chief Financial Officer of CSU) once "dressed [her] down like a child."  (Ramsey Deposition, 41.). Plaintiff explained: "[H]e said, don't you ever talk to me like that in front of the president. Don't you ever talk to me like that, call me out in front of the president like that." (Ramsey Deposition, 43.)  Plaintiff testified that she discussed her encounter with Dr. Brooks who purportedly stated that Pettis was "sexist" and that "Dr. Thomas, all of them.  They're all sexist.  He said, they're all sexist, and they're all old conservatives. He said, I'm about the most liberal one of all of them, and I'm not really all that liberal."  (Ramsey Deposition, 41.)

{¶31} Even when Dr. Brooks' alleged statement is construed in favor Plaintiff, such a conclusory statement by Dr. Brooks with its conflation of "sexist" and "conservative" is too vague to justify an inference of sexual harassment as having been severe or pervasive at Central State University.  *See Simmons v. Miranda-Mares*, 2024 U.S. Dist. LEXIS 216825, at *9 (C.D.Cal. Oct. 4, 2024) ("[p]laintiff has made only a single conclusory allegation of intentional discrimination. (Dkt. 36 at 4.)  This single statement is too vague to justify an inference of intentional discrimination"); *Beckloff v. Amcor Rigid Plastics USA, LLC*, 2017-Ohio-4467, ¶ 33 (6th Dist.) (single statement alleged as ageist, given the

context in which it was made, was insufficient to establish that age animus played any role in the termination); *Jones v. United States Postal Serv.*, 2024 U.S. Dist. LEXIS 228007, at *10 (E.D.Mich. Dec. 17, 2024) ("Jones had alleged the following: "[APWU] President Keith Combs said, they want you out because of your age." . . . Such a vague reference to a single statement made by one of her union representatives, particularly without any additional context, falls well short of alleging a valid employment discrimination against the USPS Defendants").

**{¶32}** Additionally, Plaintiff testified in her deposition that the then-university president once commented that Plaintiff "talked too much." Plaintiff testified about the circumstances or context in which the statement was made as follows:

The faculty had requested that I come and talk to them about a new system that we were onboarding on campus called Navigate. It's kind of an industry standard at a lot of universities now. And we were kind of behind in onboarding it. So me and Leanne Petry, who was the faculty senate president at the time, were working very closely in getting that taken care of. And so she had asked me to come and speak to the faculty about how they can submit progress reports and alert my staff that students need extra care, that type of thing.

So I was -- there were some questions that were asked about my area, and I was talking about the fact that my area is grant funded and that there are certain things that we can't do. So we don't have funds to do a lot of student programming unless we pay for those things out of our pockets. And some of us, self included, were doing that, but that gets taxing after a while. There's only so much you can do. We just -- we were a grant-funded area.

And I was talking about how, you know, we were going into our third grant cycle, whereas the way that these grants were set up, the university was supposed to take these -- take the funds, use the funds to implement the services for students, institutionalize the services, and then use the funds to -- or start new initiatives. So I was kind of sharing that. And Dr.

Thomas was like -- kind of waved me off like, you talk too much. You talk

too much, in -- in front of all the faculty in the room.

(Ramsey Deposition, 44-45.)

{¶33} Construing this testimony in favor of Plaintiff, as required by Civ.R. 56(C), a reasonable person would conclude that Dr. Thomas' stray comment that is not related to an employment decision—although it was embarrassing—was based on Dr. Thomas' perception that Plaintiff used more words than necessary to express herself—not based on a perceived sex stereotype. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (plurality opinion) ("[r]emarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision. In making this showing, stereotyped remarks can certainly be *evidence* that gender played a part").

{¶34} Even when the evidence is construed in Plaintiff's favor, as required by Civ.R. 56(C), an invocation of Dr. Thomas' stray comment that Plaintiff "talk[s] too much"—coupled with Plaintiff's deposition testimony that Plaintiff never heard Dr. Thomas use derogatory terms or slurs toward women (Ramsey Deposition, 45-46)—fails to establish an indica of a discriminatory animus based on sex by Dr. Thomas. *See Byrnes v. LCI Communs. Holdings*, 77 Ohio St.3d 125, 130 (1996) ("[a]bsent some causal connection or link between an employer's discriminatory statements or conduct and a plaintiff-employee, there is no permissible inference that the employer was motivated by discriminatory animus to act against the plaintiff-employee. The mere fact that an employer may have discriminated against other employees, standing alone, is insufficient").

{¶35} Defendant maintains in its summary-judgment motion that Plaintiff's adverse employment action was based on legitimate, non-discriminatory reasons. Dr. F. Erik Brooks, provost of Central State University at the time of Plaintiff's service at Central State University, represents:

During Dr. Ramsey's tenure as Executive Director of USSC, I recall

there being complaints from students about the programs she was

overseeing.  I also recall there were some CSU leadership staff who were critical of her decision making.

One of Dr. Ramsey's responsibilities was to improve the retention numbers of first year students at CSU, and during her tenure as Executive Director, those numbers went down.  The decrease in retention could not be ignored.  I attended a meeting with CSU leadership where it was decided to demote Dr. Ramsey to another position based upon the decrease in retention.

(Brooks Affidavit at ¶ 5-6.)

**{¶36}** When the submitted evidence is construed in Plaintiff's favor, as required by Civ.R. 56(C), Plaintiff has not established that Defendant's demotion of Plaintiff was pretextual.  In *Vossman v. AirNet Sys.*, 2013-Ohio-4675, ¶ 26-27 (10th Dist.), discussing the *McDonnell Douglas* analysis, the Tenth District Court of Appeals stated:

The final step in the *McDonnell Douglas* analysis is whether plaintiff established defendants' legitimate nondiscriminatory reason was pretext for unlawful discrimination because of age.

In order to establish that defendants' reason was pretext, plaintiff must prove either "'(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.'" *Sweet v. Abbott Foods, Inc.*, 10th Dist. No. 04AP-1145, 2005-Ohio-6880, ¶ 34, quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 12 (stating "[a] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason"). The ultimate burden rests with the plaintiff to present evidence that demonstrates discrimination was the real reason for the termination.  *Dautartas* at ¶ 31 (stating "'[t]he ultimate inquiry in an employment-based age discrimination case is whether an employer took adverse action "because of" age; that age was the "reason" that the

employer decided to act'"), quoting *Miller v. Potash Corp. of Saskatchewan, Inc.*, 3d Dist. No. 1-09-58, 2010-Ohio-4291, ¶ 21.

Plaintiff maintains in her response to Defendant's summary-judgment motion that, when she served as Executive Director of the USSC, she "was frustrated by Erik Brooks unwillingness to allow her to implement various strategies and ideas for the USSC, especially as it related to student retention." (Response, 2.) Plaintiff further maintains, "Although she enjoyed a very good relationship with Brooks he was often reluctant to approve her initiatives and often missed their scheduled bi weekly meetings. Plaintiff often sought out Brooks at the University to no avail. Depo. 49. Plaintiff believed Brooks didn't know how to make things happen, didn't identify proper channels to take and was intimidated by President Jack Thomas. Depo. 53-57." (Response, 2.) However, even if Plaintiff's arguments are true, such arguments demonstrate Plaintiff's frustration with Dr. Brooks—not sex-based discrimination.

Plaintiff has given sworn testimony about the circumstances of her demotion:

A. There were no specifics given.

Q. Did you ask for any clarification about what the discussions or previous discussions of job issues were?

A. My -- I didn't ask specifically that question. When Pam Bowman [Central State University's Human Resources Director at the time] read the letter and said that there have been discussions of issues with your job performance, I looked at Dr. Brooks, and I said, there have been no issues. There have been no discussions. We have not had any discussions about issues with my job performance. And he wouldn't look me in the eye. He kind of did this, where he looked down with his hands on his head, and he said, there have been informal discussions. I said, there have been no informal discussions about issues with my job performance. You didn't even evaluate me in May of '22. That's when Pam Bowman jumped in and said, we're all at-will employees here in the State of Ohio, self included. So I'll give you a couple of days to move to your new office.

Q. Other than Dr. -- well, aside from Dr. Brooks, were there communications with or informal discussions with anyone else at the university about your job performance --

A.   Not that I'm aware of.

Q.   -- either positive or negative?

A.  Not that I'm aware of.  And, interestingly enough, at that time Dr. Margery Coulson-Clark was my supervisor.  She had no idea what was going on.  When I was about to leave my office to walk down to that meeting, she called me, and she said, that meeting you're going to in HR?  I said, yeah, I have no idea what this is about.  She said, I don't know. They haven't told me anything.  The only thing that I know is I overheard Curtis Pettis in the hallway speaking to someone else, and he said, well, I'll take her.  I need a scholarship coordinator.  And she said, I have no idea what's going on.

(Ramsey Deposition, 60-61.)

**{¶37}** When Plaintiff's testimony of the circumstances of her demotion is construed in her favor, a reasonable person would conclude that, due, in part, to a failure to formally evaluate Plaintiff, Plaintiff had been under a perception that her job performance had been satisfactory.  But a failure to formally evaluate Plaintiff before Plaintiff's demotion does not establish that the informal discussions about Plaintiff's job performance as Executive Director of the USSC had no basis in fact, or that the proffered reasons did not actually motivate Plaintiff's demotion, or (3) that the proffered reasons were insufficient to cause Plaintiff's demotion.  *See generally Brown v. Kelsey-Hayes Co.*, 814 Fed.Appx. 72, 80 (6th Cir. 2020) (poor job performance is a legitimate, nondiscriminatory reason for an adverse employment action);[8] *Harper v. City of Cleveland*, 781 F.App'x 389, 396 (6th

---

[8] In *Brown v. Kelsey-Hayes Co.*, 814 F.App'x 72, 80 (6th Cir.2020) stated,

> A plaintiff can establish pretext by showing that the proffered reason: "(1) ha[d] no basis in fact; (2) did not actually motivate the [adverse employment] action; or (3) [was] insufficient to warrant the [adverse employment] action." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018) (quoting *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014)).  Parties need not follow the categories rigidly.  The categories simply provide a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer [take the employment action] for the stated reason or not?'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).

Cir.2019) (noting that employee misconduct and poor performance are legitimate reasons for an adverse-employment action); *Brown v. Ohio State Univ.*, 616 F.Supp.2d 740, 751 (S.D.Ohio 2009) ("[r]easons such as lack of leadership and management skills, the failure to accept problems within her responsibility . . . and poor communication are legitimate non-discriminatory reasons for an employee's demotion or termination"). Moreover, when Plaintiff's testimony of the circumstances of her demotion is construed in her favor, a reasonable person would conclude that the suggestion attributed to Mr. Pettis that "I'll take her [i.e., Plaintiff]. I need a scholarship coordinator" runs counter to sex-based discrimination by Pettis.

{¶38} Since this case is before the Court on a motion for summary judgment, the burden shifts to Plaintiff to demonstrate that there is a genuine issue of material fact as to whether Defendant's proffered reasons for her demotion were merely a pretext for sex discrimination. However, when the submitted evidence is construed in Plaintiff's favor, as required by Civ.R. 56(C), a reasonable person would conclude that Plaintiff has not satisfied her burden to establish a genuine issue of material fact that Defendant's proffered reason for her demotion was merely pretext.

## III.   Conclusion

{¶39} For reasons set forth above, after the evidence is viewed most strongly in favor of Plaintiff, as required by Civ.R. 56(C), no genuine issue as to any material fact remains to be litigated on Plaintiff's claim of sex-based discrimination, and as a matter of law, Defendant is entitled to judgment in its favor on Plaintiff's claim of sex-based discrimination. Defendant's motion for summary judgment shall therefore be granted.

LISA L. SADLER
Judge

[Cite as *Ramsey v. Cent. State Univ. Bd. of Trustees*, 2025-Ohio-2171.]

| | |
|---|---|
| DR. IEESHA RAMSEY | Case No. 2023-00277JD |
| Plaintiff | Judge Lisa L. Sadler |
| v. | <u>JUDGMENT ENTRY</u> |
| CENTRAL STATE UNIVERSITY BOARD OF TRUSTEES | |
| Defendant | |

## IN THE COURT OF CLAIMS OF OHIO

{¶40} For reasons set forth in the Decision filed concurrently herewith, Defendant's Motion For Summary Judgment filed on April 18, 2025, is GRANTED. Judgment is entered in favor of Defendant. All previously scheduled future events are VACATED. Court costs are assessed against Plaintiff. The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

**Filed May 30, 2025**
**Sent to S.C. Reporter 6/20/25**